DEL'S BIG SAVER FOODS, INC.,
Burdell Robish, and Janis Robish,
Plaintiffs-Appellants,

v.

CARPENTER COOK, INC., et al.,
Defendants-Appellees.

No. 85–1590.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1986.

Decided July 15, 1986.

Rhea A. Myers, Terwilliger Law Firm, Wausau, Wis., for plaintiffs-appellants.

Charles H. Bohl, Frisch Dudek & Slattery, Ltd., Milwaukee, Wis., Barbara J. Swan, Brynelson Herrick Gehl & Bucaida, Madison, Wis., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

A retail grocer, Del's, and its owners, Mr. and Mrs. Robish, seek damages under section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983, from Del's' wholesale supplier, Carpenter Cook, and from Carpenter Cook's lawyers, claiming that the defendants deprived the plaintiffs of their property, under color of state law, without due process. They did this, argue the plaintiffs (whom, for the sake of simplicity, we shall usually refer to just as "Del's"), by executing an ex parte order that had been issued by a Wisconsin state judge. The order authorized Carpenter Cook to repossess the collateral of its loans to Del's and in other ways to protect its security interest. The oddity that a purely private suit arising from a commercial dispute would be brought in federal court under a statute designed to protect persons from unconstitutional conduct by state officers is only one of the unusual features of this litigation.

Carpenter Cook had sold groceries to Del's on credit and had taken back a promissory note and a security interest in both inventory and fixtures. As further security it persuaded Del's to give it an option, exercisable upon default, to rent Del's' store for five years. Del's owned the store but under a land contract rather than a deed; if the option was exercised Carpenter Cook would assume Del's' obligations (essentially those of a mortgagor) under the land contract. Del's did default, owing almost $300,000 to Carpenter Cook, which brought suit in state court to collect this debt and at the same time asked the judge to issue an ex parte order protecting its security interest. The judge issued the order. The order required Carpenter Cook to post a $100,000 bond and directed Del's to turn over the collateral (mainly groceries) to Carpenter Cook, to let Carpenter Cook "place one of its manager's [sic] in charge of said store to preserve the collateral by operating the business as a going concern," and to remove any personal effects (i.e., property not covered by the security agreement) from the store as soon as Carpenter Cook took possession.

Carpenter Cook's lawyers, together with an executive of the company, proceeded to the grocery store, order in hand, to take possession of the store. They placed the personal effects of the Robishes on the sidewalk in front of the store, the executive took charge of the store, Carpenter Cook exercised its option to rent the store, and the new management began selling the groceries to satisfy Carpenter Cook's lien. The ex parte order required that the income from these sales be deposited in a separate account. The Robishes first learned of the ex parte order when Carpenter Cook's people arrived to take possession of the store.

The order did not fix a hearing date and apparently Del's never did move the court for a hearing on, or other relief from, the order. Instead it brought this suit, three

months after the ex parte order was served on it. Del's argues that the prompt execution of the ex parte order deprived it of its property without notice or an opportunity for a predeprivation hearing, and hence, it argues, without due process of law. A few weeks after the district court granted the defendants' motion to dismiss for failure to state a claim, 603 F.Supp. 1071 (W.D.Wis. 1985), a state judge granted Carpenter Cook summary judgment on its underlying suit to collect the amount in default from Del's.

■ Section 1983 provides a remedy only against action taken under color of state law, and the usual defendant in a section 1983 case is therefore a state officer. We first must consider whether the absence of such a defendant puts the case beyond the reach of the statute. We think not. A state cannot avoid its obligations under the due process clause by delegating to private persons the authority to deprive people of their property without due process of law. If as Del's alleges the effect of Wisconsin's law of repossession is to arm creditors with the state's power to dispossess debtors of their property, Del's can challenge the law in a suit against the creditor under section 1983. The ex parte order instructed the sheriff to assist Carpenter Cook if need be to carry out the order. The fact that the sheriff remained in the background and hence could not be joined as a defendant does not deprive Carpenter Cook's action in enforcing a judicial order of its character as state action.

In so holding we take one step beyond *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Edmondson had obtained a writ of attachment against Lugar's property from a state court, and the county sheriff had executed the writ. Lugar sued Edmondson under section 1983, challenging the constitutionality of the state's statutory procedure for attachment. The Supreme Court held that the suit could be maintained even though no public official had been named as a defendant; "when the State has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute," this is sufficient state action to come within the reach of section 1983. *Id.* at 942, 102 S.Ct. at 2756. The quoted language describes the present case equally well, the only difference being that in this case the writ of attachment (as in effect the order to repossess the collateral was) was executed by the private party without having to call on the sheriff. See also *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir.1985). But as we said, this should not make a difference. The state court's order gave Carpenter Cook the powers of the sheriff, and if Del's had resisted the attachment the sheriff would have popped in and taken over from Carpenter Cook; the order directed the sheriff to assist. Carpenter Cook's lawyers were in fact if not in form deputy sheriffs *pro tem.* when they seized the store and dumped the owners' personal property on the sidewalk. See also *Lewis Service Center, Inc. v. Mack Financial Corp.*, 696 F.2d 66 (8th Cir.1982); *Folsom Investment Co. v. Moore*, 681 F.2d 1032, 1037 (5th Cir.1982).

■ Another preliminary question is whether Del's can use a federal civil rights action as the vehicle for contesting the validity of an order issued by a state court. We considered the general question at length in *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554 (7th Cir.1986), and can therefore be brief about it here. Many an order issued by a state court deprives a person of what he claims is his property. An order for specific performance of a real estate contract, directed against a recalcitrant seller, is one example. Yet the seller could not challenge the order's scope, evidentiary basis, or legal validity by suing the buyer in federal court under section 1983. To allow such suits could lead to displacing almost all of the civil law of the states into the federal courts.

Several principles stand in the way of this unacceptable result. Until the state court's order becomes final, the federal court has the power in an appropriate case to stay proceedings in the federal court

suit. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976) (federal abstention in favor of pending parallel state litigation); Shapiro, *Jurisdiction and Discretion*, 60 N.Y.U.L.Rev. 543, 587–88 (1985). The delay of three months between the filing of the state suit by Carpenter Cook and the filing of the federal suit by Del's might not be a sufficient ground for exercising that power, cf. *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 719 (7th Cir.1982), but an additional factor is that Del's failed to follow the simple route open to it under state law for obtaining complete relief—namely, moving for a hearing in state court on the propriety of the ex parte order. Maybe unless and until it did so the federal court could refuse to proceed with the federal suit, though this we need not decide. Apart from any doctrines of abstention, the fact that an order subject to further review in the state court system is unlikely to work a deprivation of property will in any event make a suit under section 1983 premature until that review is completed.

After the state court's order becomes final, an attempt to challenge it by means of a section 1983 suit in federal court will ordinarily be blocked by the defense of res judicata—assuming that the federal grounds for challenging the order could have been raised by way of defense in state court, a question not free from doubt in this case, compare *Fuller v. Hurley*, 559 F.Supp. 313, 320 (W.D.Va.1983); *Hernandez v. Finley*, 471 F.Supp. 516, 518–20 (N.D.Ill.1978) (three-judge court), aff'd without opinion under the name of *Quern v. Hernandez*, 440 U.S. 951, 99 S.Ct. 1488(1), 59 L.Ed.2d 765 (1979), but one we shall not have to explore. If the federal grounds were raised in the state court and explicitly or implicitly decided there, the attempt to use a section 1983 suit to reexamine them in federal court might be blocked independently by the rule that the only federal court with appellate jurisdiction over state court judgments is the Supreme Court. See 28 U.S.C. § 1257; *Lynk v. LaPorte Superior Court No. 2, supra*,

789 F.2d at 563, and cases cited there; *Nordgren v. Hafter*, 789 F.2d 334, 336 (5th Cir.1986) (per curiam). We state this proposition tentatively because if as in this case the federal plaintiff is not actually trying to set aside the state court's judgment (Del's doesn't want to set aside the repossession order, which was fully executed long ago—it wants damages for the consequences of the order) the federal suit is not easily characterized as appellate and hence may not violate section 1257. Currie, *Res Judicata: The Neglected Defense*, 45 U.Chi.L.Rev. 317, 324–25 (1978).

None of these doctrines would pose an insuperable obstacle to this suit if the order of which Del's complains had become moot on or after its execution, for then there would never have been a final judgment that could be appealed within the state court system or that could have the effect of res judicata in the federal. But recall that Carpenter Cook, to get the order, had to post a substantial bond. This ensured that the order would not be rendered moot by its execution. If Del's was hurt by the order it could come back to the state court, show why the order was invalid, and demand compensation out of the bond. It did eventually come back to the state court—when Carpenter Cook moved for summary judgment on its underlying claim—and argued that there hadn't been a default under the terms of the loan; and it lost. If it had won, that would have demonstrated the invalidity of the ex parte order. Since Del's could have raised federal as well as state grounds for thinking the order invalid, its failure to do so delivered into the hands of its enemies a beautiful res judicata defense to assert in the present action. But Carpenter Cook has never argued res judicata, presumably because it won the case in the district court on other grounds before the Wisconsin state court issued its decision in Carpenter Cook's suit against Del's—and for all we know that decision may not be final within the Wisconsin court system. Even in this court none of the defendants argues res judicata; the defense is therefore waived.

If Del's had raised a federal defense in the state court proceeding and if the decision rejecting that ground had become final, an effort to relitigate it in this suit in federal court under section 1983 might as we said be blocked by the rule that only the Supreme Court (among federal courts) can review state court judgments deciding federal questions; and if so, this rule, being jurisdictional, would compel the dismissal of the suit even though Carpenter Cook has never asserted this ground for reversal. But since Del's did not raise a federal question in state court the Supreme Court never obtained potential appellate jurisdiction, exclusive or otherwise, over the state court's proceeding, even if that proceeding is now final. The present suit is an effort not to appeal from the state court's resolution of a federal question but to split the plaintiffs' state and federal claims between state and federal courts. The effort is improper, but it is improper by virtue of the doctrine of res judicata, a defense that is waivable and was waived here. So we need not get into the question whether Carpenter Cook's lawyers, who were not parties to the state court proceeding, could nevertheless use a final judgment in that proceeding to defend against Del's federal suit against them. See Restatement (Second) of Judgments § 29 (1982).

We come at last to the merits. Section 9–503 of the Uniform Commercial Code, Wis.Stat. § 409.503, entitles a secured creditor faced with a default to take possession of the collateral either "without judicial process if this can be done without breach of the peace" or "by action," the latter a term that as the district court explained has been construed to include actions under chapter 810 of the Wisconsin statutes, the state's replevin statute. 603 F.Supp. at 1075. Chapter 810 authorizes the state court to issue an order for return of property before final judgment in a replevin suit, if the plaintiff submits an affidavit specifying the nature and location of the property and the nature and grounds of his claim to it. Wis.Stat. § 810.02. The procedure is ex parte, which means that a debtor can find himself, as Del's did, dispossessed

of his property without notice or an opportunity for a hearing in advance of the dispossession. However, the debtor may move the judge at any time to modify or set aside the order "for any sufficient cause." Wis.Stat. § 810.05. We must consider the constitutional sufficiency of the procedure created by the interaction of these various statutory provisions.

As we explained in *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir.1982), the question whether due process of law requires that the state give a property owner notice and an opportunity for a hearing before rather than after it takes his property depends on the incremental costs and benefits of such a "predeprivation" hearing. The incremental costs are the costs of delay that the predeprivation hearing would impose. Here they would be formidable. When a default occurs, the secured creditor must move rapidly to liquidate the collateral, especially if all or some of it (groceries here—the debtor's inventory) is perishable and must therefore be sold immediately or lose its value. If Carpenter Cook had to dawdle through a hearing on whether it could seize the collateral, Del's might either let the stuff rot (ordinarily and here a security agreement forbids the debtor to make even routine sales from inventory after a default is declared) or, if it continued selling it, might use the proceeds to meet other expenses. In either event the value of Carpenter Cook's security interest would dwindle unless it could make some side deal with Del's—another source of uncertainty, delay, and impairment of creditor's rights.

As an antidote to much woolly thinking about the plight of debtors we point out that the costs of impairing the value of security agreements to creditors would not be borne entirely by the creditor class, if there is such a thing. The fortunes of creditors and debtors are linked. Anything that raises the costs of default to creditors will cause interest rates to rise, in order to offset the added costs; and interest is paid by debtors. In general and in the long run, rights granted to defaulting debtors are

financed not by the creditors themselves, wealthy or otherwise, but by those debtors who do not default. Thus Boyes & Faith, *Some Effects of the Bankruptcy Reform Act of 1978*, 29 J.Law & Econ. 139 (1986), shows that the expansion of debtor rights in the 1978 overhaul of the bankruptcy law has made it more difficult for high-risk individuals to borrow.

■ A predeprivation hearing would confer benefits as well as impose costs; it would reduce the likelihood of an erroneous repossession order that might work a hardship to the debtor. But this danger is small where the creditor is required to put up a substantial bond before obtaining a repossession order ex parte. There is no suggestion that the bond was inadequate to compensate Del's for the damages that the ex parte order might cause if the order turned out to have been erroneously issued (though as a matter of fact the state court eventually confirmed the order). Of course since the entire proceeding leading up to a repossession order is ex parte there is always a danger that the bond will be insufficient. If so and if the order is issued erroneously and if the creditor is not good for the full extent of the damages (or if damages are not an adequate remedy, cf. *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir.1970) (Friendly, J.)) and if a predeprivation hearing, necessarily summary though it would have been, would have averted the error, then the hearing would be beneficial. But that is an awful lot of ifs, and it is certainly material here that Del's did not move promptly in the state court to modify or vacate the ex parte order, as it could have been expected to do if the order caused immediate and severe distress.

Considering the importance of summary repossession as a creditor's remedy (and hence its value to nondefaulting debtors, who pay lower interest rates than they would have to do if creditors lacked good remedies in the event of default), the substantial although not complete adequacy of the debtor's remedy against an unsound or improvident repossession (here it may for all we know have been entirely adequate), and the debtor's right to negotiate with his creditors in advance of default for better terms in the event a default occurs, we would be inclined if free to do so to hold that a procedure which provides for a bond and entitles the debtor to a prompt postdeprivation hearing is constitutionally adequate. But we must consider the extent to which this course may be foreclosed to us by decisions of the Supreme Court. Two of the decisions on which Del's relies—*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)—were narrowly limited in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), a case much like the present in which a state trial judge had at a creditor's request issued an ex parte order sequestering personal property of the debtor; the Supreme Court held that there was no violation of the Constitution. *Sniadach*, in which the Court had held that due process requires notice and an opportunity for a hearing before an employee's wages can be garnished, was distinguished in *Mitchell* primarily on the basis of the hardship to the employee of losing his wages and the creditor's lack of any claim to the wages themselves. See 416 U.S. at 614–15, 94 S.Ct. at 1903–04. In the present case of course the creditor was merely seizing the collateral of a business loan—though by doing so it was putting the debtor out of business. *Fuentes*, invalidating the summary repossession of goods sold to consumers on the installment plan, was distinguished in *Mitchell* on the ground that the order of repossession had been issued not by a judicial officer but by a court clerk on demand. See 416 U.S. at 615, 94 S.Ct. at 1904.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court revisited the garnishment problem and held that even though the statute in question did not permit garnishment of wages it was unconstitutional because, as in *Fuentes*, the writ of garnishment had been issued by a court

clerk. See *id.* at 606, 95 S.Ct. at 722. The statute did not provide for an early hearing either, see *id.* at 606–07, 95 S.Ct. at 722–23, as the statute upheld in *Mitchell* had. But under the Wisconsin procedure Del's could have moved for an immediate postdeprivation hearing; its failure to do so cannot be attributed to anything in the procedure itself. The debtor protections in the Wisconsin procedure are as extensive as those in the Nebraska statute upheld in *Lewis Service Center, Inc. v. Mack Financial Corp.,* supra, are free of the infirmities of the statutes struck down in *Johnson v. American Credit Co.,* 581 F.2d 526, 533–34 (5th Cir.1978) (judge had no discretion not to issue writ of attachment), and *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123, 1129–30 (3d Cir.1976) (the same infirmity plus others), and in short are adequate under the principles set forth in *Mitchell.*

Del's argues, however, that the order went far beyond a mere authorization for the temporary seizure of collateral pending final judgment. The order is not in terms an interim order pending final judgment, is not limited to placing the collateral in the hands of Carpenter Cook but also authorizes Carpenter Cook to put one of its managers in charge of the store, makes no reference to Del's' statutory right to move to modify or set aside the order at any time, enjoins Del's "from entering the premises or otherwise interfering with [Carpenter Cook's] operation of said store to preserve the collateral," and, in short, on its face indefinitely dispossesses Del's from premises that belong to it under the land contract. Actually the order is not so high-handed as this description suggests. Given the perishable nature of the collateral, installing a Carpenter Cook manager in the store—a kind of informal receivership—makes good sense. Del's suggests, rather tongue in cheek as it seems to us, that all Carpenter Cook had to do to protect its interests was to remove the collateral from the store. This would have meant carting fruits and produce and other food and groceries, many with extremely limited shelf lives, out of Del's and trying to find another grocery outlet for the goods or perhaps

holding a distress sale on the sidewalk in front of Del's. The only way the value of the collateral could be realized was by continuing to operate Del's, and it was reasonable for Carpenter Cook to insist on being allowed to take charge of the operation in order to ensure an orderly liquidation that would protect its security interest.

Nor was the order fatally defective in failing to advise Del's explicitly of its statutory right to seek vacation or modification of the order or (a related point) make absolutely clear the order's interim nature. The order ends, "until further order of this Court"—an invitation to move for vacation or modification. The first thing Del's did when it received the order (served on it when Carpenter Cook's lawyers arrived to take over the store) was, we assume, to take the order to its lawyer. The lawyer must have known immediately that Del's had a right to move to vacate or modify it forthwith; if he didn't know this, the fault is his rather than Carpenter Cook's. The lawyer could have asked the state judge to narrow the order, make it expressly temporary, limit Carpenter Cook's control of the premises, raise the bond, or at least allow the Robishes to enter what was after all still their property. The lawyer requested none of these things.

A more basic point is that if, as we have held, the Wisconsin procedure is constitutionally adequate, the fact that an order issued pursuant to it is multiply defective does not make the order unconstitutional. Due process does not guarantee correct outcomes in every case, *Lynk v. LaPorte Superior Court No. 2, supra,* 789 F.2d at 563–64; that would make every error of state law that deprived a person of liberty or property a federal constitutional error, which is an absurd proposition. Due process just requires procedures that will usually lead to correct outcomes. Even if the order went further than necessary and took away Del's' property (through the provision forbidding the Robishes to enter premises) rather than just putting Carpenter Cook in control of Del's' business, this means only that there was a deprivation of

property—and there was that anyway, because Del's owned the groceries, fixtures, etc. in which Carpenter Cook had a security interest. It does not follow that the deprivation was made without due process of law. Due process, which is not an absolute but a function of circumstances and hence authorizes fewer procedural safeguards in an emergency, see, e.g., *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974); *Sutton v. City of Milwaukee, supra,* was preserved by giving Del's a statutory right to seek an immediate hearing on a motion to modify or set aside the order and by the other safeguards in Wisconsin's replevin statute, including the fact that a detailed affidavit is required and that the order is issued by a judge rather than a clerk. The right to an immediate hearing did not have to be stated explicitly in the order; there is no constitutional right to citations.

One issue remains. Del's argues that it could not in fact have gotten relief under section 810.05 from the part of the order that galls it the most, the part relating to the real estate—the part that in effect enforced (and without notice or an opportunity for a hearing) Carpenter Cook's option to rent Del's' premises out from under the Robishes' feet, as it were. Chapter 810 concerns the replevying of personal property, and therefore, Del's argues, authorized it to seek relief only from the part of the order that involved the collateral for Del's' debt to Carpenter Cook; the part that enforces the option by forbidding Del's "from entering the premises" is wholly outside the scope of chapter 810 and therefore Del's had no right under section 810.05 to obtain a hearing on this part of the order. This argument has no merit. An issue that is certainly open in a hearing under 810.05 is whether the ex parte order was in whole or part outside the scope of chapter 810. No better ground for vacating it could be imagined. If the order had authorized Carpenter Cook to seize the Robishes' children and sell them in partial satisfaction of Del's debt, Del's would have had a good ground for a motion under section 810.05 to vacate

this part of the order as not authorized by the statute. It is not the law of Wisconsin that the further an order strays from the limits authorized by chapter 810, the less authority state judges have to enforce those limits.

The order may have gone too far but of course this is a danger inherent in an ex parte procedure, and is constitutionally tolerable if proceeding ex parte is made necessary by the existence of an emergency and if the state provides adequate procedural safeguards, of which one is that the order be issued by a judge and another is that a prompt hearing on the validity of the order be obtainable; Wisconsin provides both safeguards. We need not consider what if any immunities from liability for damages Carpenter Cook and its lawyers might have if they had violated Del's' constitutional rights, see *Buller v. Buechler,* 706 F.2d 844, 850–53 (8th Cir.1983), since we are persuaded that there was no constitutional violation.

AFFIRMED.