54 F.3d 779
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Thomas R. SALZER, Plaintiff-Appellant,
v.
Frederick DELLINGER, et al., Defendants-Appellees.
 No. 91-3475.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 21, 1995.*
Decided May 11, 1995.
Rehearing and Suggestion for Rehearing In Banc
Denied June 8, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Thomas R. Salzer, proceeding pro se, appeals the district court's entry of summary judgment in favor of the defendants in this civil rights action brought under 42 U.S.C. Sec. 1983. We affirm.
 
 I. FACTUAL BACKGROUND
 
 2
 Salzer owned and operated an automobile salvage, repair, and sales business in Whitley County, Indiana. In September 1988, Salzer obtained a business loan from Summit Bank, pledging his Porsche 928 sports car as collateral for the loan. Several months later, Salzer defaulted on the loan, prompting an attorney for Summit Bank, David R. Smelko, to file a replevin action in Whitley County, Indiana, Superior Court on April 27, 1989. Smelko applied ex parte for a prejudgment order of possession of the car pursuant to Indiana Code Secs. 34-1-9.1-1 et seq. Accompanying the application were a replevin bond for $25,000 and Summit Bank officer G.V. Zimmerman's affidavit alleging that Salzer had threatened to destroy the Porsche if the bank tried to take possession of it. The state judge entered an "Order for Pre-judgment Possession" commanding the Sheriff of Whitley County to take possession of the Porsche. Ind. Code Sec. 34-1-9.1-7. The judge also entered an "Order to Show Cause and Notice of Hearing" which set a hearing date of May 4, 1989, advised Salzer to appear on that date and show cause why the vehicle should not be delivered to the bank, and notified Salzer that he could file a written undertaking to stay the delivery of the vehicle on or before the time of the hearing. Ind. Code Sec. 34-1-9.1-3. At the bottom of the show cause order was the following notation:[2]
 
 TO: Sheriff of Whitley County
 
 3
 This order must be served on the Defendant on or before April 27, 1989, which is five (5) days (Sundays and holidays excluded) before the hearing.
 
 
 4
 The day that both orders were issued Whitley County Sheriff Michael D. Schrader instructed Deputy Sheriff Frederick Dellinger to obtain possession of the Porsche. Deputy Sheriff Dellinger went immediately to Salzer's residence to serve him with the orders, but no one was home. The next day, Deputy Sheriff Dellinger again tried, unsuccessfully, to serve Salzer. On May 1, 1989, Deputy Sheriff Dellinger returned twice to Salzer's residence to serve the orders, with no result. The second time, Deputy Sheriff Dellinger posted copies of the orders on Salzer's front door.
 
 
 5
 In the meantime, Sheriff Schrader learned that the Porsche was stored in Salzer's attached garage, and relayed that information to Deputy Sheriff Dellinger. On May 2, 1989, Dellinger, acting on legal advice of the county attorney that Indiana Code Sec. 34-1-9.1-10, which permitted the use of force in executing a prejudgment possession order,[3] authorized breaking into the garage, returned to the residence with two other deputies to attach the Porsche. Deputy Sheriff Dellinger noticed upon his arrival that the orders he posted the day before were gone. Deputy Sheriff Dellinger knocked on the front door and, after receiving no response, proceeded to break into the locked garage by kicking in a front panel of the garage door. Once inside the garage, the deputies secured the car and had it towed away.
 
 
 6
 At the May 4, 1989, show cause hearing, Salzer appeared with retained counsel, who moved for a change of venue. The motion was granted, and the case was transferred to Allen County Superior Court, where it remained pending. Salzer then brought the instant two-count complaint in federal court. Count I alleged a violation by attorney Smelko of the Fair Debt Collection Practices Act, 15 U.S.C. Secs. 1692 et seq, and was not pursued on appeal. Count II alleged a violation of the Fourth and Fourteenth Amendments under 42 U.S.C. Sec. 1983. Salzer named as additional defendants Summit Bank and its agent G.V. Zimmerman; the Whitley County Sheriff's Department, Sheriff Schrader, and Deputy Sheriff Dellinger; the Whitley County Plan Commission and its assistant director Reeves; and Whitley County, Indiana. The matter was referred with the parties' consent to a magistrate judge who gave summary judgment for the defendants. 28 U.S.C. Sec. 636(c). This appeal followed.[4]
 
 II. PROCEDURAL DUE PROCESS CLAIM
 
 7
 Statutes authorizing seizure of property without prior notice and hearing, but providing a prompt post-deprivation hearing, may be free from due process challenge if they pass certain tests. See Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974); Connecticut v. Doehr, 501 U.S. 1 (1991); see also Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc., 795 F.2d 1344 (7th Cir. 1986). We agree with the magistrate judge that Indiana's attachment statute meets the standards.
 
 
 8
 Salzer claims, however, that the deputy sheriffs did not make service on him in the manner required by Indiana Code Sec. 34-1-9-1.9. Section 34-1-9-1.9 required service at least five days, Sundays and holidays excluded, before the hearing on May 4, 1989. The notation on the order required the same. Section 34-1-9-1.9 also dictated that delivery be made to the defendant personally, or by leaving it at his usual place of abode with some person of suitable age and discretion. Here, the orders were posted on Salzer's front door on May 1, 1989. The due process issue, however, is not whether the service requirements of the state statute were fulfilled, see River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166 (7th Cir. 1994) ("[T]he Constitution does not require state and local governments to adhere to their procedural promises. Failure to implement state law violates that state law, not the Constitution; the remedy lies in state court.") (citations omitted); Osteen v. Henley, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law...is not a denial of due process, even if the state law confers a procedural right.") (collecting cases), but whether Salzer received notice. He evidently did, and appeared with counsel at the hearing. Salzer's opportunity to contest the legality of the attachment of his Porsche in Indiana state court was all the process "due" him. Mid-American Waste Systems, Inc., v. City of Gary, 49 F.3d 286, 291 (7th Cir. 1995).
 
 III. FOURTH AMENDMENT CLAIM
 
 9
 Salzer's next contention is that the deputy sheriffs violated his Fourth Amendment right to be free from unreasonable searches and seizures when they made a warrantless forced entry into his attached garage to repossess the Porsche.[5] The deputies insist that they had qualified immunity because the constitutional right at issue was not clearly established, and that in all events, "extraordinary circumstances" prevented them from knowing that they were violating that right.[6] Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).
 
 
 10
 Under the doctrine of qualified immunity, government officials like the deputy sheriffs are shielded from damages liability under section 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818. While a prior case need not address the precise factual situation facing the officials, the unlawfulness of their actions must be apparent in light of pre-existing law. Anderson v. Creighton, 483 U.S. 635, 639 (1987). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. This circuit follows a two-prong analysis for qualified immunity: "(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?". Rakovich v. Wade, 850 F.2d 1180, 1210 (7th Cir.) (en banc), cert. denied, 488 U.S. 968 (1988).
 
 A.
 
 11
 We think that the deputies' warrantless entry into Salzer's attached garage and seizure of the Porsche in furtherance of the repossession order violated the Fourth Amendment. The Fourth Amendment explicitly protects a person's interest in the privacy of his home, and an attached garage is undoubtedly a part of that private space. Los Angeles Police Protective League v. Gates, 907 F.2d 879, 884-85 (9th Cir. 1990) (holding that an attached garage was part of the curtilage of a home); see United States v. Dunn, 480 U.S. 294, 300 (1987) (setting forth factors for determining the extent of a home's curtilage); see generally 1 W. LaFave, Search and Seizure, Sec. 2.3 (2d ed. 1987) ("Under Katz [v. United States, 389 U.S. 347 (1967)], it is a search to violate 'the privacy upon which [one] justifiably relied,' and unquestionably a person can have such an expectation of privacy as to garages and barns and the like even when they are not in 'close proximity' to his dwelling."). Further, the Fourth Amendment's protections are no less diminished when a search and seizure is undertaken in the context of a civil proceeding as opposed to a criminal one. See Soldal v. Cook County, 113 S. Ct. 538, 546 & 546 n. 11 (1992) (reaffirming that the protections of the Fourth Amendment apply fully to civil cases).
 
 B.
 
 12
 Nevertheless, we believe it was not clearly established by May, 1989, that Indiana Code Sec. 34-1-9.1-10, authorizing forcible entry of a building to execute an order of possession, must yield to the Fourth Amendment. While able counsel could be expected to find parallels in G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977),[7] and in Specht v. Jensen, 832 F.2d 1516, 1525 (10th Cir. 1987),[8] qualified immunity does not require local officials to do the same. Trust & Inv. Advisors, Inc. v. Hogsett, 43 F.3d 290, 298-99 (7th Cir. 1994). The deputy sheriffs had a court order to repossess Salzer's Porsche and information that the vehicle was located in his garage. They consulted Ind. Code Sec. 34-1-9.1-10, whose validity had not been tested, and believed it allowed them to enter the garage to attach the Porsche. The deputies contacted the county attorney and apprised him of the situation they confronted and the law they had found. The county attorney advised them that a forced entry into the garage to attach the Porsche pursuant to the statute was proper. Shortly thereafter, in reliance on this advice, the deputies broke into Salzer's attached garage without a warrant and seized his Porsche. Under these facts, we conclude that the deputy sheriffs did not violate any clearly established right, so they were entitled to qualified immunity under Sec. 1983.[9] See, e.g., England v. Hendricks, 880 F.2d 281, 284 (10th Cir. 1989) (police officers had qualified immunity from suit under 42 U.S.C. Sec. 1983 where the applicability of Utah's aider and abettor law to the plaintiffs was unclear, and the officers consulted with and relied on the advice of a county attorney), cert. denied, 493 U.S. 1078 (1990); Arnsberg v. United States, 757 F.2d 971, 982 (9th Cir. 1985) (IRS agents had qualified immunity in Bivens action for executing invalid arrest warrant where they obtained and relied on advice of an assistant United States attorney that probable cause existed, and reasonable attorneys could disagree about the probable cause assessment), cert. denied, 475 U.S. 1010 (1986).
 
 IV. CONSPIRACY CLAIMS
 
 13
 Salzer also contends that the attachment of his Porsche was the product of two conspiracies against him: one involving the efforts of the private defendants (Smelko, Zimmerman, and Summit Bank) and the Sheriff's Department to break into his garage under section 1983; the other involving intimidation by the Plan Commission, Reeves, and the Sheriff's Department under Indiana law. The first conspiracy was urged as a reason permitting the private defendants to be found liable under section 1983, but because the judgment in their favor is no longer before us on appeal, we need not consider this claim.
 
 
 14
 The second conspiracy arises out of the following facts. On May 3, 1989, Salzer paid an unannounced visit to the Sheriff's Department. During his visit, the Sheriff's Department received a call from a staff member of the Whitley County Plan Commission. The staff member requested the sheriff's assistance in serving Salzer with a letter notifying him to remove burned-out automobiles parked on his property. The letter read in its entirety:
 
 Dear Mr. Salzer:
 
 15
 It has been brought to our attention that you have yet to complete clean-up of your property in Laud. My drive-by inspection confirms at least 5 burned out cars, a dumpster and assorted other trash remains on your property. In addition, one of the vehicles is located partially on the roadway in front of your property. You have until May 12, 1989 to complete clean-up of this property. If clean-up is not completed by May 12, 1989, this matter will be forwarded to the County Prosecutor for disposition.
 
 
 16
 Sincerely,
 
 Walter Reeves, Asst. Director
 
 17
 The staff member was told that Salzer was present at the Sheriff's Department and could be served there. When Reeves learned of Salzer's whereabouts, he went to the Sheriff's Department and delivered the letter to Sheriff Schrader, who then personally handed it over to Salzer.
 
 
 18
 Salzer contends that Reeves and the sheriff conspired to warn him of criminal prosecution if he did not forget about the attachment and the breaking and entering. On the face of the matter, it was purely by chance that the warning letter[10] was delivered to Salzer while he was discussing the attachment with Sheriff Schrader. There was nothing in the record to show a wrongful purpose or a genuine issue of fact in that regard.
 
 
 19
 Salzer's remaining contentions concerning the magistrate judge's consideration of his deposition testimony and Deputy Sheriff Dellinger's affidavit and report were raised for the first time on appeal and therefore are waived. Yorger v. Pittsburgh Corning Corp., 733 F.2d 1215, 1220 (7th Cir. 1984).
 
 AFFIRMED
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Circuit Rule 34(f). Three appellees have filed such a statement. Upon consideration of these statements, the record, and the briefs, the appeal is submitted on the record and the briefs
 
 
 [2]
 This notation was consistent with Indiana Code Sec. 34-1-9.1-3, which provides, in pertinent part, that "[t]he order [to show cause] shall set forth the date, time and place for the hearing, which shall be no sooner that five (5) days, Sundays and holidays excluded, from the service thereof and shall direct the time within which service thereof shall be made upon the defendant." Ind. Code Sec. 34-1-9.1-3
 
 
 [3]
 Indiana Code Sec. 34-1-9.1-10 provides, in pertinent part: "If the property or any part thereof is in a building or inclosure, and if the property is not voluntarily delivered, the officer shall cause the building or inclosure to be broken open in such manner as he reasonably believes will cause the least damage to the building or inclosure, and take the property into his possession." Ind. Code Sec. 34-1-9.1-10
 
 
 [4]
 By order of the Court dated August 24, 1992, the plaintiff voluntarily dismissed the defendants Summit Bank, G.V. Zimmerman, and David R. Smelko, so they are no longer parties to this appeal. Fed. R. App. P. 42(b)
 
 
 [5]
 In his brief, Salzer focuses on the deputies' alleged failure to make a proper demand for the collateral before repossessing it. The statute does not require a demand, Ind. Code Sec. 34-1-9.1-10, and case law indicates that no demand is necessary if it would be futile, Tucker v. Capital City Riggers, 437 N.E.2d 1048, 1049 (Ind. App. 1982)
 
 
 [6]
 In light of our disposition of the qualified immunity question, we have no need to address the applicability of Harlow's "extraordinary circumstances" defense. Compare, e.g., V-1 Oil Co. v. State of Wyoming, Dept. of Environmental Quality, 902 F.2d 1482, 1489 (10th Cir.) (police officer "who conducts a warrantless search on the same day he was advised by fully informed, high-ranking government attorneys that a particular statute, which had not yet been tested in any court, lawfully authorized that particular search" was prevented by extraordinary circumstances from knowing the relevant legal standard and has qualified immunity under Sec. 1983), cert. denied, 498 U.S. 920 (1990); with, e.g., Watertown Equip. Co. v. Norwest Bank Watertown, 830 F.2d 1487, 1495-96 (8th Cir. 1987) (advice of attorney did not immunize private defendants from their participation in attachment proceeding based on extraordinary circumstances where advice was equivocal on the constitutionality of state attachment statute, and case presented no unique or perilous factual situation), cert. denied, 486 U.S. 1001 (1988)
 
 
 [7]
 In G.M. Leasing Corp., the Supreme Court held that no warrant was required for the seizure of the debtor's cars on public streets subject to levy by the Internal Revenue Service because it did not involve an invasion of privacy under the Fourth Amendment. However, the seizure of books and records in the debtor's office did require a warrant because it involved an intrusion into a place the debtor considered private. 429 U.S. at 351-54
 
 
 [8]
 In Specht, the Tenth Circuit held that the police were not entitled to qualified immunity for their participation in a warrantless search of the plaintiff's home pursuant to a state court order of possession and a writ of assistance where the writ on its face was not a search warrant and was directed to any sheriff rather than to a police officer. 832 F.2d at 1525
 
 
 [9]
 The magistrate judge's ruling that the private defendants were qualifiedly immune, Salzer v. Summit Bank, No. F-90-67, Mem. Op. at 42-43 (N.D. Ind. 1991), has been superseded by Wyatt v. Cole, 112 S. Ct. 1827 (1992 (qualified immunity is unavailable to private defendants charged with liability under 42 U.S.C. Sec. 1983 for invoking state replevin statutes)
 
 
 [10]
 The Plan Commission has the authority to enforce the zoning laws and refer alleged violations to the local prosecutor. See Ind. Code Secs. 36-7-4-1013, 36-7-4-1014