111 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earl R. KEY, JR., Plaintiff-Appellant,
v.
Lois DRAKE, Ginger Arvin, Mary Norman, Felicia Boyd-Smith,
Ingrid Kipfer, Kim Nelson-Blackburn, Richard
Eliot, and Patricia Ingle, Defendants-Appellees.
 No. 96-1821.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 4, 1997.*
Decided March 25, 1997.
 
 Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Earl R. Key, Jr. appeals the district court's grant of summary judgment in favor of the defendants on each of his claims brought pursuant to 42 U.S.C. § 1983. Key also filed supplemental state claims. 28 U.S.C. § 1367. The underlying events concern the custody and treatment of his son Robert Key ("Robert"), who was born in 1977, and the criminal prosecution of Earl Key. At the time of the events in question, all of the defendants except Ingle, who was Robert's great-aunt, were either state or county officials.
 
 
 2
 Key allegedly sexually abused Robert's stepsister, A.J. (There was no allegation that Key abused Robert.) In March 1989, based on these allegations the Marion County Office of Family and Children petitioned the Marion County Superior Court, Juvenile Division ("juvenile court") to issue an order removing both children from Key's home temporarily. The juvenile court granted the request and Eliot, pursuant to the court's order, removed Robert from Key's home. Robert was placed in defendant Ingle's care and custody.
 
 
 3
 Throughout 1989, several proceedings took place on Robert's custodial status and Key's attempt to reobtain guardianship. (R. 130 at 3-7.) Robert remained with Ingle until November 1989, when the juvenile court authorized Robert's placement with his mother and grandmother in Florida. On February 20, 1990, Robert was again placed in Ingle's care. After several more proceedings, Robert was returned to Key's home on December 21, 1990.
 
 
 4
 At the same time as the juvenile court proceedings were taking place, defendant Eliot, on May 10, 1989, swore out an affidavit alleging that Key had raped A.J. This affidavit led to the filing of an information with the Marion County Superior Court, charging Key with rape and related offenses. On April 24, 1991, Key was convicted of all three counts contained in the information and sentenced to 35 years in prison. The Indiana Court of Appeals, however, reversed Key's conviction and ordered the case dismissed on January 13, 1993. Also on April 24, 1991, Key was charged with raping Ingle. On May 18, 1993, a jury acquitted Key on this charge. Between 1991 and 1993, Robert resided in several institutions and group homes, as well as residing for a time with Ingle and for a period with his mother. In August 1993, Robert was returned to Key's care.
 
 
 5
 After some procedural wrangling that resulted in the dismissal of some of Key's claims, several § 1983 claims (including a conspiracy claim against all the defendants) and state law claims remained unresolved. The district court then granted summary judgment in favor of the defendants on all of the federal claims. On the state law claims, the district court granted Ingle's motion for summary judgment on two of the claims that were solely against her. The district court denied summary judgment on the other two state law claims. The court, however, having dismissed all the federal claims prior to trial, declined to exercise jurisdiction over these two claims. 28 U.S.C. § 1367(c)(3). Key appeals the district court's grant of summary judgment.
 
 
 6
 After he had filed his notice of appeal, Key filed a motion in the district court to stay the entry of summary judgment pending appeal. The district court denied the motion. In his appellate brief, Key argues that the district court erred in denying this motion. However, Key's notice of appeal was filed prior to the district court's denial of this motion and he has not filed a separate notice of appeal. Therefore, we shall not review the district court's denial of Key's motion to stay entry of summary judgment. See Fed.R.App.P. 3(c) ("A notice of appeal ... must designate the judgment, order, or part thereof appealed from...."). As for the district court's ruling on summary judgment, we affirm with one modification.
 
 
 7
 The district court dismissed Key's § 1983 claims against Ingle on the ground that Key had not demonstrated that Ingle, who had no official affiliation with the state, county, or any of their agencies, had acted under color of state law. 42 U.S.C. § 1983 actions are "normally reserved for claims against state and municipal employees." Soldal v. County of Cook, 942 F.2d 1073, 1074 (7th Cir.1991) (en banc ), rev'd on other grounds, 506 U.S. 56 (1992). But, a private person may be subject to § 1983 liability if he or she acts under color of state law. Dennis v. Sparks, 449 U.S. 24, 27 (1980); Apostol v. Landau, 957 F.2d 339, 343 (7th Cir.1992). In order to satisfy this showing the plaintiff must demonstrate that the defendant "has acted together with or has obtained significant aid from the state officials, or [that] his conduct is otherwise chargeable to the state." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).
 
 
 8
 We conclude that the district court correctly found that Ingle was not a state actor. Key's strongest argument for Ingle's being a state actor is that Ingle was acting pursuant to a court order when she had care and custody of Robert. We have held that when the state gives private citizens the power to carry out state law, a plaintiff can bring a § 1983 action against such a person who, armed with state power, violates the plaintiff's constitutional rights. Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc., 795 F.2d 1344, 1346 (7th Cir.1986). In that case, the defendants, who were creditors of the plaintiff and the creditor's lawyers, physically seized the plaintiff's property pursuant to a court order. We concluded that the court order gave the defendants the power of the Sheriff and therefore they "were in fact if not in form deputy sheriffs pro tem. when they seized [the plaintiff's property]." Id.
 
 
 9
 In the present case, the juvenile court issued orders on several occasions that gave Ingle custody of Robert. However, Ingle was not given authority equivalent to that exercised by a sheriff (or other state officials) by virtue of the order as were the defendants in Del's Big Saver Foods. Ingle did not have the right to seize Robert or any other power such that she could fairly be characterized as a state actor. Lugar, 457 U.S. at 937. If we were to hold that a person could be characterized as a state actor merely by receiving custody or any other right pursuant to a court order, then the prevailing party in any lawsuit would be subject to § 1983 liability. See Soldal, 942 F.2d at 1075 ("[T]he action of a private person in enforcing rights conferred on him by state law is not deemed state action."); see also Milburn v. Anne Arundel County Dep't of Soc. Servs., 871 F.2d 474, 476-79 (4th Cir.1989) (holding that foster parents were not automatically state actors where "the State [had not] so far insinuated itself into a position of interdependence with the [foster parents] that it must be recognized as a joint participant in the challenged activity"); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir.1986) (per curiam ) (holding that a private organization that provided foster homes for state agencies was not a state actor, where at "no time did [the private organization] assume the state's mantle of authority"). None of Key's other arguments regarding Ingle's being a state actor merits discussion.
 
 
 10
 The district court also granted summary judgment to each of the other defendants on all of the § 1983 claims. On appeal, Key argues that the district court erred when it considered as evidence facts contained in the Certified Record of the Juvenile Court under Federal Rule of Evidence 803(8) (the public records exception to the hearsay doctrine). (See Appellant's Brief at 15-17.) He also asserts that the district court impermissibly evaluated the weight and credibility of conflicting evidence in concluding that the defendants must prevail as a matter of law. (See Appellant's Brief at 17-21.) We conclude that the district court's grant of summary judgment did not depend upon the juvenile court record. Moreover, we conclude that the district court did not err in concluding that the juvenile court record was admissible under the public records exception to the hearsay rule. Fed.R.Evid. 803(8); United States v. Lechuga, 975 F.2d 397, 399 (7th Cir.1992). We also conclude that the district court did not improperly weigh evidence in granting summary judgment for the defendants. It is clear that from the parties' filings and from the district court's order (which thoroughly discusses these claims so we will not discuss the details ourselves) that Key had failed to show that there was any genuine dispute of material fact warranting denial of summary judgment.
 
 
 11
 Key's conspiracy claim also misses the mark. When a plaintiff claims that defendants conspired to violate his civil rights, he must proffer "specific facts tending to show that a conspiracy existed to survive a summary judgment motion; conclusory allegations will not suffice." Easter House v. Felder, 852 F.2d 901, 919 (7th Cir.1988). However, because there will rarely be direct evidence of an agreement between conspirators, a plaintiff can establish the existence of a conspiracy by sufficiently probative circumstantial evidence. Bell v. City of Milwaukee, 746 F.2d 1205, 1255 (7th Cir.1984). Beyond showing the existence of a conspiracy, the plaintiff must identify a specific right that was violated; "[s]ection 1983 authorizes recovery for conspiracy to violate a clearly established right, not for the conspiracy itself." Easter House, 852 F.2d at 920.
 
 
 12
 The grant of summary judgment for the defendants on Key's conspiracy claim was proper. The substantive acts underlying his conspiracy claim were all asserted by Key as separate § 1983 claims. As we have already discussed, Key has failed to show that any of the defendants violated his constitutional rights and thus he cannot maintain a conspiracy claim. Id. at 920. Moreover, he has failed to produce evidence sufficient to raise a genuine dispute of material fact as to the existence of a conspiracy.
 
 
 13
 We make one modification to the district court's order. The district court reached the merits of two of Key's state claims. 28 U.S.C. § 1367(c)(3) gives the district court discretion to decide whether to exercise jurisdiction over supplemental state claims when, as in this case, all the claims over which it had original jurisdiction have been dismissed prior to trial. However, the general rule is that when the federal claims have been dismissed before trial, the district court should relinquish jurisdiction over the state claims. Carr v. Cigna, 95 F.3d 544, 546 (7th Cir.1996). The one exception to this rule of thumb that is relevant here is that the district court should decide the state law claim when the outcome is absolutely clear. Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251 (7th Cir.1994).
 
 
 14
 In the present case, the state claims that the district court chose to decide arose under statutes that are clearly worded as criminal provisions with no explicit civil remedy. See Ind.Code §§ 35-46-1-4, 35-42-2-1(a)(2)(B)). However, the district court did not cite (and we have not found) any case law from Indiana courts that addresses whether one may raise a civil claim under these provisions. Therefore, the principles of federalism and comity counsel that the proper course for the district court would have been to relinquish jurisdiction over these claims. We therefore modify the district court's judgment so as to accomplish this. We also conclude that the district court acted properly in relinquishing jurisdiction over the remaining two state claims.
 
 
 15
 AFFIRMED AS MODIFIED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f). Defendant Ingle has not submitted a brief on appeal and we decide the case without the assistance of such