**George E. APOSTOL, Plaintiff–
Appellant,**

v.

**Eliot LANDAU, Mark Gallion, and Chris
Haloulos, Defendants–Appellees.**

**No. 90–2319.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1991.

Decided Feb. 21, 1992.

Rehearing Denied June 8, 1992.

---

12. *Id.*

13. *Id.* at 440, 103 S.Ct. at 1943.

14. *Id.*

15. *Id.* at 435, 103 S.Ct. at 1940.

16. *Id.* at 440, 103 S.Ct. at 1943.

340

Michael S. Baird (argued), Anna C. Stotis, Stotis, Chionis, Craven & Baird, Chicago, Ill., for plaintiff-appellant.

Eliot Landau, pro se.

Steven L. Sommerfield, Landau & Associates, Downers Grove, Ill., Gregory E. Rogus (argued), Segal, McCambridge, Singer & Mahoney, Chicago, Ill., for defendants-appellees.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant Eliot Landau, an attorney, represented Shelly Bolda in a civil suit brought against the plaintiff, George E.

Apostol. On September 11, 1986, Landau procured a temporary restraining order from the Circuit Court of DuPage County, Illinois, requiring Apostol to surrender certain documents relevant to Bolda's suit. Before serving Apostol with the court order, Landau, Bolda and a process server stopped at the Westchester, Illinois, Police Department. There Landau told the defendants, Officers Mark Gallion and Chris Haloulos, that Apostol might become violent during the service of the temporary restraining order, and he asked the officers to accompany him in the event that any violence ensued. Gallion and Haloulos briefly reviewed the court order and agreed to assist him. Landau, Bolda and the process server then proceeded to Apostol's office at the Agape Counseling Center. Gallion and Haloulos, both of whom were in uniform, followed separately in their squad cars.

Upon their arrival at Apostol's office, Apostol was served with the temporary restraining order. Apostol read the order and began collecting the requested documents in the presence of Landau, Bolda, and Officers Gallion and Haloulos. Shortly thereafter, Haloulos left the premises, but Gallion remained with Landau and Bolda until the document search was completed. Landau retained all the relevant documents uncovered during the search.

Apostol brought this civil rights action against Gallion, Haloulos, Landau and Bolda, alleging that they had conducted an illegal search of office and seizure of documents in violation of the fourth and fourteenth amendments. After discovery was completed, officers Gallion and Haloulos filed a motion for summary judgment based on a claim of qualified immunity. The district court denied this motion. Gallion and Haloulos appealed this denial, and on March 26, 1990, this Court reversed and remanded the case for a determination by the district court of whether the officers violated clearly established law and were thereby precluded from asserting the qualified immunity defense.

On remand, the district court granted the officers' summary judgment motion, concluding that "Apostol has not met his burden of demonstrating the existence of clearly established constitutional or statutory rights barring the actions of Gallion and Haloulos." The court also dismissed the claim against Landau, stating that "[t]here does not appear to be any independent basis for liability under 42 U.S.C. § 1983 against [him]." Apostol now appeals both of these judgments.

## I.

We first examine whether as a matter of law officers Gallion and Haloulos are entitled to qualified immunity because their conduct during the search of Apostol's office violated clearly established rights. Under the doctrine of qualified immunity, government officials performing discretionary functions are protected from civil liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984). This is a question of law, *see Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985), which essentially boils down to a two-step inquiry. First, to determine whether the law was clearly established at the time of the defendants' alleged violation, this court asks "whether the law was clear in relation to the specific facts confronting the public official when he or she acted." *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir.1987); *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987). The plaintiff bears the burden of convincing the court of the existence of the clearly established constitutional right at issue. *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Second, to evaluate the objective legal reasonableness of the defendants' conduct, this court asks whether a constitutional right is so established that reasonably competent officers would agree on its application to a given set of facts. *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir.1987), *cert. denied*, 484

U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988).

■ The existence of a clearly established constitutional right is a purely legal question which requires this court to apply a *de novo* standard of review. *Rakovich v. Wade,* 850 F.2d at 1204. We must, however, also examine the undisputed facts of the record in evaluating the objective legal reasonableness of the defendants' conduct. *Id.* at 1204–1205. As this court pointed out in *Green v. Carlson,* "[w]hen considering the issue of qualified immunity on a motion for summary judgment, a district court should consider all of the undisputed evidence in the record, read in the light most favorable to the non-movant." 826 F.2d at 650. Accordingly, if the undisputed facts of this case, so construed, indicate that the defendants' conduct did not violate any clearly established legal standard, the defendants are entitled to qualified immunity as a matter of law. *See id.* at 652. But if there are issues of disputed fact upon which the question of immunity turns, or if it is clear that the defendants' conduct violated clearly established norms, the district court's grant of summary judgment in favor of the defendants was not proper. *See id.*

Apostol asserts a two-pronged challenge to the district court's grant of summary judgment on the issue of qualified immunity. He first argues that he successfully met his burden of establishing that defendants Haloulos and Gallion violated his clearly established rights under the fourth and fourteenth amendments. Assuming such, he then contends that Haloulos and Gallion are not entitled to qualified immunity because reasonable officials in their position would have recognized the illegality of the manner in which the search of Apostol's office was conducted. We find no merit in this argument.

■ To begin with, we cannot say that the officers' conduct was clearly illegal when they acted. There is no authority in force at the time this incident occurred which expressly states or implies that officers infringe the protections of the fourth amendment if they are present during an illegal execution of a court order issued to a private citizen. The one decision factually similar to the case before us—*Mancusi v. Deforte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968)—is distinguishable. In *Mancusi,* the Supreme Court held that state officials violated the fourth amendment by conducting a search and seizure of business documents pursuant to a subpoena duces tecum issued by a District Attorney. Here, however, the officers did not participate in any search of Apostol's office or seizure of Apostol's business documents; they simply stood by passively while Landau served and executed the court order. Nor was the authority of the temporary restraining order questionable on its face, as was the subpoena in *Mancusi;* the language of this court order was specific and could be construed to require Apostol's documents to be delivered in the presence of police officers. In short, officers Haloulos and Gallion had no reason to believe that Landau was acting beyond the authority of the court order.

■ Even if we determined that the defendants' conduct violated clearly established laws, we cannot say that the law was so clear in relation to the specific facts confronting the officers that, from an objective standpoint, they acted unreasonably. *Green,* 826 F.2d at 649. Officers Haloulos and Gallion were not acquainted with any of the persons involved in Bolda's civil suit against Apostol. Neither officer had any reason to doubt Landau's belief that Apostol might become violent during the execution of the temporary restraining order. And as we noted above, they had no reason to question the authority of the temporary restraining order itself. Based on the information they possessed at the time they were called upon to act, the officers acted reasonably by accompanying Landau and Bolda during the service and enforcement of the court order.

## II.

■ The next issue we address is whether the district court erred when it *sua sponte* dismissed Apostol's action against

Landau. *Sua sponte* dismissals for failure to state a claim upon which relief may be granted are permitted, provided a sufficient basis for the court's action is apparent from the plaintiff's pleading. *See Doe On Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986); *Flora v. Home Federal Savings & Loan Association,* 685 F.2d 209, 212 (7th Cir.1982). In evaluating the propriety of a *sua sponte* dismissal, we take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiffs. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Therefore, Apostol's claim should be dismissed only if it appears beyond doubt that he is unable to prove any set of facts that would entitle him to relief. *Ellsworth,* 774 F.2d at 184; *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985).

■ Apostol's claim against Landau is based on 42 U.S.C. § 1983. The law is well-settled that a private person who acts under the color of state law may be subject to liability under § 1983. *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.,* 795 F.2d 1344, 1346 (7th Cir.1986); *Malak v. Associated Physicians Inc.,* 784 F.2d 277, 281 (7th Cir.1986); *Greco v. Guss,* 775 F.2d 161 (7th Cir.1985). Generally, the private use of state-sanctioned remedies will not rise to the level of state action. *Edmonson v. Leesville Concrete Co.,* — U.S. ——, 111 S.Ct. 2077, 2083–84, 114 L.Ed.2d 660 (1991). However, state action will be found when private parties make extensive use of state procedures with "the overt, significant assistance of state officials." *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988); *see Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). As this court pointed out in *Greco v. Guss,*

"[t]hus, even if a private party misuses a state statute, the deprivation can still be under color of state law if the authority of state officials puts the weight of the State behind the private decision." 775 F.2d at 167. Accordingly, Apostol may successfully assert a § 1983 claim against Landau if officers Haloulos and Gallion provided a level of assistance sufficient to bring Landau's conduct under the rubric of state action.

■ Viewing the facts of this case in the light most favorable to Apostol, we hold that the district court erred by *sua sponte* dismissing his claim against Landau. The level of participation by the officers, though minimal, raises a question of fact sufficient to allow the action against Landau to go forward despite the judgment in favor of the officers. Whether Landau would succeed on this issue is best determined by the district court.

### III.

For the forgoing reasons, the district court's grant of summary judgment in favor of defendants Haloulos and Gallion is AFFIRMED. However, the district court's *sua sponte* dismissal of plaintiff's claim against defendant Landau is REVERSED, and the cause is remanded for further proceedings.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I join that part of the opinion and judgment of the court that reverses the district court's *sua sponte* dismissal of the plaintiff's claim against defendant Landau. I respectfully dissent, however, from the court's affirmance of the district court's grant of summary judgment in favor of defendants Haloulos and Gallion.

### 1.

As the court states in the initial stages of its analysis, when considering the issue of qualified immunity on a motion for summary judgment, a district court must consider the entire record and read the undisputed evidence in the light most favorable

to the non-moving party. *Green v. Carlson*, 826 F.2d 647, 650 (7th Cir.1987). Moreover, as the court also acknowledges, if there are issues of disputed fact upon which the issue of immunity turns, summary judgment is not proper.

Here, the court presents, at different points in its opinion, decidedly different possible characterizations of the record. In discussing the issue of qualified immunity, the court describes the officer's conduct as entirely passive: "the officers did not participate in any search of Apostol's office or seizure of Apostol's business documents; they simply stood by passively while Landau served and executed the court order." Majority Op. at 342. By contrast, when discussing the possibility that Mr. Landau's actions might be considered "state action," the court notes that there is a question of fact with respect to the level of participation of the officers. "A police agreement to 'stand by in case of trouble' does not convert a private repossession into state action." *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir.1985). Rather, "the overt, significant assistance of state officials" is required. *Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). Either the court is undertaking a major expansion of the state action doctrine or it has erred in its assessment of the record as to the role of the officers.

In my view, the record presents a genuine issue of fact with respect to the role of the officers in the episode at Mr. Apostol's office. At this point in the development of the record, it is impossible to determine whether the officers passively stood by in an effort to keep the peace or aided in an illegal search. The court should acknowledge frankly this dispute and permit the parties to resolve the issue in the district court. Fairness—and established legal principle—requires no less.

2.

The court's opinion also suggests that the officers were entitled to qualified immunity because the authority of the temporary restraining order was not "questiona-

ble on its face" and "could be construed to require Apostol's documents to be delivered in the presence of police officers." "In short, officers Haloulos and Gallion had no reason to believe that Landau was acting beyond the authority of the court order." Majority Op. at 342.

The court is correct in stating that we must assess the defendants' conduct at a sufficiently particularized level of specificity to permit a determination "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Of course, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...." *Id.* Here, however, the court embarks on a curious and potentially very dangerous application of this principle. It undertakes an assessment of the particular state court temporary restraining order at issue and declares, without an effort to support its analysis by reference to the text, that the officers could have construed the document as permitting the broad-ranging search conducted by Mr. Landau in their presence and perhaps with their help.

I respectfully disagree that the state court order is susceptible to such an interpretation. More fundamentally, I disagree that this court ought to hold that, as a matter of law, police officers are incapable of distinguishing between court orders that permit them to undertake a search of the property and personal effects of private individuals and those that do not. The Supreme Court has made it clear that such a presumption of ignorance on the part of professional law enforcement officers is unwarranted. *See Mancusi v. DeForte*, 392 U.S. 364, 370–71, 88 S.Ct. 2120, 2124–25, 20 L.Ed.2d 1154 (1968). It is indeed a novel proposition of law to hold, as the court does today, that police officers are not charged with the responsibility of knowing that their authority to search the property and personal effects of others is circumscribed by the warrant requirement of the Fourth Amendment and the specific exceptions to that requirement. *See Hurl-*

*man v. Rice,* 927 F.2d 74, 79–80 (2d Cir. 1991).

Because the court's judgment on the qualified immunity issue is based on an erroneous reading of the record and a legal conclusion that finds no support in our case law, I respectfully dissent.