Ponciano S. ANGARA, Plaintiff,

v.

CITY OF CHICAGO, a municipal corporation, Alexander Vroustouris, individually and as Inspector General of the City of Chicago; Teresita B. Sagun, individually and as Commissioner of Department of Sewers of the City of Chicago; Michael Spagnola and James Sullivan, individually and as employees of the Office of Inspector General of the City of Chicago; and John Doe(s), and Jane Doe(s), individually and as employees of the Office of the Inspector General of the City of Chicago, Defendants.

No. 94 C 5199.

United States District Court,
N.D. Illinois,
Eastern Division.

July 20, 1995.

356

Barry Charles Kessler, Kessler & Powen, Chicago, IL, for plaintiff.

Nancy L. Van Allen, Thaddeus S. Machnik, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Susan S. Sher, City of Chicago, Law Department, Chicago, IL, for defendants.

*MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

The plaintiff, Ponciano Angara, filed a three-count amended complaint alleging a number of federal claims under 42 U.S.C. § 1983 and a state law false imprisonment claim. The defendants have filed a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6). For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part.

## I. *BACKGROUND*

The following is a summary of the facts in the light most favorable to the plaintiff. Beginning in 1987 and continuing until May 1994, the plaintiff worked as a mason inspector for the City of Chicago Department of Sewers. His job was to inspect sewer connections made by independent contractors to assure that they were made in conformity with plans approved by the City of Chicago ("City"). In carrying out his duties, the plaintiff used his own car to go to and from various construction sites. In return, the City reimbursed the plaintiff for the mileage logged on his car.

Beginning in November 1992 and continuing until April 1993, the Office of the Inspector General ("OIG") conducted surveillance of several employees of the Department of Sewers in furtherance of an ongoing investigation of mileage misrepresentations. On at least six occasions, employees of the OIG followed the plaintiff for the entire day, tracked his routes, and made written notes of each surveillance. These notes were then given to the Inspector General, who used them to compile an Investigative Case Summary. After compiling the summary, the Inspector General shredded the notes, despite the fact that the notes exculpated the plaintiff of any charges of mileage misrepresentation. Soon thereafter, the Inspector General charged the plaintiff with theft while performing city duties.

On August 25, 1993, after arriving at City Hall to get work assignments for the day, the plaintiff and about sixteen other employees of the Department of Sewers were approached by several OIG employees, who flashed their badges and ordered the plaintiff and the others into some cars. Against his will, the plaintiff was compelled to get into one of the cars and was taken to a building located at 1224 West Van Buren, Chicago, Illinois. There, the plaintiff was placed alone in a room without windows and told to wait. At least one person was stationed outside the room to ensure that the plaintiff did not attempt to leave. When he made use of the restroom facilities, he was escorted by an OIG employee. Furthermore, the plaintiff was never advised of the reasons for his detention, no warrant was ever issued for his arrest, nor was plaintiff ever taken before a judge for a probable cause hearing.

After about one hour, two employees of OIG arrived and interrogated the plaintiff about his alleged misconduct. They never advised him of his right to leave or gave him any *Miranda* warnings. After the interrogation, the two employees prepared a written statement and tendered it to the plaintiff. The statement contained *Miranda* warnings and the plaintiff's version admitting to the misconduct. The statement was untrue and had been written by one of the OIG employees. However, plaintiff signed it based on the false representation that if he cooperated by signing it, he would not lose his job. On May 16, 1994, the plaintiff was discharged from his job.

Plaintiff contends that both the detention and interrogation were carried out pursuant to orders given by defendant Vroustouris, the Inspector General of the City of Chicago. Plaintiff further contends that the city ordinance which created the Office of Inspector General vested final decision-making authority in the Inspector General with respect to the manner of conducting investigations, thereby making him responsible for establishing final policy for investigations undertaken by his office. Finally, plaintiff claims that the named defendants, all of whom were licensed attorneys, acted under color of state law and in total disregard of established constitutional rights.

Counts I and II contain a number of claims under 42 U.S.C. § 1983. In Count I, plaintiff alleged that defendants deprived him of his right to be free from unlawful seizures of his

person in violation of the Fourth Amendment and that they deprived him of his liberty and substantive due process rights in violation of the Fourteenth Amendment. In Count II, plaintiff alleged that defendants compelled him to be a witness against himself, in violation of the Fifth Amendment. Finally, in Count III, plaintiff alleged a state law false imprisonment claim.

## II. *STANDARD OF REVIEW*

■ A Rule 12(b)(6) motion to dismiss for failure to state a claim is granted only where it is beyond doubt that the plaintiff is unable to prove any of the facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must take all well-pleaded facts and allegations as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, plaintiff is entitled to all reasonable inferences that may be drawn from the complaint. *Id.*

## III. *DISCUSSION*

### A. *Section 1983 Claims*

#### 1. *Fourth Amendment*

In Count I, plaintiff alleged that there was an unlawful seizure of his person when he was seized and restrained for purposes of interrogation on August 15, 1993. Defendants argue that the seizure was not unreasonable and that it was done with probable cause. Based on the allegations stated on the face of the complaint, this court disagrees.

■ To state a claim under the Fourth Amendment, plaintiff must show that there was a seizure and that the seizure was unreasonable. *Kernats v. O'Sullivan,* 35 F.3d 1171, 1177 (7th Cir.1994). The proper standard to determine if the defendants' actions constitute a seizure for purposes of the Fourth Amendment is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct.

1870, 1877, 64 L.Ed.2d 497 (1980). In Count I, plaintiff alleged that when he arrived at work on the day in question, he was ordered, against his will, to get into a car and was taken to a building west of the Loop. Once there, he was placed in a windowless room and instructed to wait. At least one person was stationed outside of the room to ensure that the plaintiff did not attempt to leave and when plaintiff made use of the restroom, he was escorted by one of the defendants. Based on these facts and a standard of reasonableness, the court finds that this does constitute a seizure under the Fourth Amendment.

■ Next, the court addresses whether the seizure was reasonable under the circumstances. The Supreme Court in *O'Connor v. Ortega,* 480 U.S. 709, 725, 107 S.Ct. 1492, 1502, 94 L.Ed.2d 714 (1987), held that public employer intrusions on the constitutionally protected privacy interests of government employees for investigations of work-related misconduct should be judged by the standard of reasonableness under all the circumstances. Under that standard, "both the inception and the scope of the instruction must be reasonable." *Id.* First, given the allegations in the complaint, the seizure of the plaintiff was not justified at its inception. Plaintiff made clear in the complaint that the allegations of misconduct were false and that the defendants knew it well before the date of the seizure. Second, the scope of the intrusion was not reasonably related to the seizure that did take place. The detention of the plaintiff in order to coerce a confession out of the plaintiff was unreasonable given the defendants' knowledge on the day of the seizure. Accordingly, the court holds that plaintiff's allegations in Count I state a claim under the Fourth Amendment.

#### 2. *Fourteenth Amendment*

■ In Count I, the plaintiff also raised the claim that he was deprived of his liberty and substantive due process rights in violation of the Fourteenth Amendment. Because the plaintiff has a valid claim under the Fourth Amendment, his Fourteenth Amendment claim is superfluous and should be dis-

missed. *Albright v. Oliver,* — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Kernats,* 35 F.3d at 1182. In *Albright,* the plaintiff alleged that the defendant deprived him of substantive due process under the Fourteenth Amendment—his "liberty interest"—to be free from criminal prosecution except upon probable cause. The court dismissed the claim after holding that the claim should be more appropriately analyzed under the Fourth Amendment. *Albright,* — U.S. at —, 114 S.Ct. at 813. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). The allegations in this case clearly fall under the Fourth Amendment. Accordingly, plaintiff's Fourteenth Amendment claim should be dismissed.

### 3. *Fifth Amendment*

■ In Count II, plaintiff alleged that while in custody and without *Miranda* warnings, he was interrogated and compelled to be a witness against himself, in violation of the Fifth Amendment. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This, however, is not relevant to the plaintiff's case. Plaintiff never received an opportunity to testify against himself; he was never prosecuted criminally. Furthermore, the plaintiff can get no relief under § 1983 because the defendants failed to give him *Miranda* warnings. A *Miranda* violation cannot form the basis for an independent civil action because there is no constitutional right to *Miranda* warnings. *Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir.1968); *Johnson v. Carroll,* 694 F.Supp. 500, 504 (N.D.Ill.1988). The remedy under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is nothing more than the suppression of evidence at a criminal trial. Therefore, given that no criminal trial ever took place in this case, Count II is dismissed.

### B. *Municipal Liability*

■ Under *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), municipalities may not be held vicariously liable under § 1983 regardless of fault merely because they employed a tortfeasor. Rather, liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. While easier said than done, a plaintiff can establish the existence of such a municipal policy in one of four ways: (1) an official pronouncement of a municipal or legislative body, *e.g.,* a municipal ordinance or official policy; (2) an action by an agent in accordance with delegated authority; (3) an action by an individual with final decision-making authority; or (4) custom or action. *Cornfield ex rel. Lewis v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). Plaintiff in his response, contends that the municipality should be liable because one of the defendants, Inspector General Vroustouris, has final decision-making authority on investigations of employee misconduct.

■ Under appropriate circumstances, a municipality can be held liable under § 1983 for a single decision by a municipal policymaker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). However, as the court made clear in *Pembaur,* not every action by an employee with decision-making authority subjects a municipality to liability:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.... The official must also be responsible for establishing final

government policy respecting such activity before the municipality can be held liable. *Id.* at 481–83, 106 S.Ct. at 1299–1300. Furthermore, "whether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). State or local law "will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125, 108 S.Ct. at 925.

■ In his response to the defendants' motion, the plaintiff makes the following four-point argument in support of his position: (1) by ordinance, the City of Chicago established the Office of Inspector General to investigate the performance of governmental employees; (2) the Mayor appointed and the City Council approved the installment of defendant Vroustouris to the position of Inspector General; (3) by ordinance, the City vested final decisionmaking power in the Inspector General, thereby making Vroustouris responsible for establishing final policy of the City with respect to investigations of employee misconduct undertaken by his office; and (4) the Inspector General is solely responsible for promulgating rules and regulations governing the conduct of investigations. While the court concedes that the Inspector General holds a position of authority within his office, the court finds nothing in the record that would lead to the conclusion that he had policymaking authority. *See, e.g., Eversole v. Steele, et al.,* 59 F.3d 710 (7th Cir.1995) (co-directors of four-county drug task force had positions of authority but not policymaking authority). Interestingly, the plaintiff attached to his complaint a copy of the ordinance which created the Office of Inspector General. Chicago Municipal Code, § 2–56–010, *et al.* From this, however, it is evident that the City Council, and not the Inspector General, has final policymaking authority in this area of municipal business. In the ordinance, the City Council conferred a number of powers and duties on the Inspector General, yet nowhere did the City Council vest him with final policymaking authority. Chicago Municipal Code, § 2–56–030. Only the City Council itself has it. In fact, if

it wished, it could exercise its authority to abolish the office entirely. Therefore, the court concludes that the Inspector General does not have final policymaking authority and, thus, that the City of Chicago in this case cannot be held liable under § 1983.

### C. *Qualified Immunity*

■ Defendants also argue that plaintiff's § 1983 claims should be dismissed against the individual defendants because they are entitled to qualified immunity. Qualified immunity shields public officials from liability to the extent their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Biddle v. Martin,* 992 F.2d 673, 675 (7th Cir.1993) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The Seventh Circuit has set out the following two-step inquiry to determine if qualified immunity applies:

> First, the plaintiff must show that the law was clearly established when the challenged conduct occurred. In this Circuit, we ask "whether the law was clear in relation to the specific facts confronting the public official when he or she acted." *Apostol v. Landau,* 957 F.2d 339, 341 (7th Cir.1992). Second, we evaluate the objective legal reasonableness of the defendants' conduct. We inquire whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts. *Id.* at 341. *See also Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992).

*McDonnell v. Cournia,* 990 F.2d 963, 968 (7th Cir.1993). In this case, the court has already found that plaintiff has stated a claim under the Fourth Amendment. Furthermore, given that the plaintiff alleged that the defendants possessed evidence that exculpated the plaintiff from any wrongdoing, the court finds that a seizure of the plaintiff's person and a forced confession was objectively unreasonable. Consequently, defendants'

qualified immunity argument is rejected at this time.

### D. *False Imprisonment*

Defendants also ask the court to decline to exercise jurisdiction over plaintiff's state law claim for false imprisonment. However, since the court has not dismissed all of the claims over which it has original jurisdiction, namely plaintiff's § 1983 Fourth Amendment claim, and because the claim in Count III forms part of the same case or controversy under Article III, the court exercises supplemental jurisdiction over the state claim. 28 U.S.C. § 1367.

### E. *Punitive Damages*

 Defendants finally contend that plaintiff's request for damages should be stricken to the extent he seeks to recover punitive damage against the City and the individual defendants in their official capacity. The court agrees. Punitive damages cannot be assessed against a municipality under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 272, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Accordingly, plaintiff's request for punitive damages against the City and the individual defendants in their official capacity is stricken.

### CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's § 1983 claims under the Fifth and Fourteenth Amendments are dismissed with prejudice. Plaintiff's § 1983 claim under the Fourth Amendment and the false imprisonment claim under state law remain. Defendant City of Chicago cannot be held liable under § 1983. Plaintiff's request for punitive damages against the City and the individual defendants in their official capacity is stricken.