**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ERILINE COMPANY S.A.; EDGARDO
BAKCHELLIAN,
           *Plaintiffs-Appellants,*

           v.

JAMES P. JOHNSON; UNIVERSAL
MARKETING GROUP, INCORPORATED;
PRIME SOURCE TRADING, LLC;
STEVEN CLOUDTREE; MICHAEL
KOUCKY, a/k/a Michael Loucky,
           *Defendants-Appellees,*        No. 03-1613

           and

RAYMOND E. MOORE; LEE ALAN
MOORE,
           *Defendants.*

───────────────────

JUSTIN ANTONIPILLAI,
      *Amicus Supporting Appellees.*

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-01-215)

Argued: November 29, 2005

Decided: March 17, 2006

Before WILLIAMS, KING, and GREGORY, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Williams and Judge Gregory joined.

---

**COUNSEL**

**ARGUED:** Don Rodney Kight, Jr., Asheville, North Carolina, for Appellants. Justin Sanjeeve Antonipillai, ARNOLD & PORTER, L.L.P., Washington, D.C., for Amicus Supporting Appellees. **ON BRIEF:** Elizabeth A. High, ARNOLD & PORTER, L.L.P., Washington, D.C., for Amicus Supporting Appellees.

---

**OPINION**

KING, Circuit Judge:

Appellants Eriline Company S.A. and Edgardo Bakchellian seek relief from the dismissal of their state law claims, arising out of an alleged fraud scheme, against various defendants who were in default. They contend on appeal that the district court erred in raising a statute of limitations defense *sua sponte* and dismissing their state law claims on that basis. *See Eriline Co. S.A. v. Johnson*, No. CA-01-215 (W.D.N.C. Oct. 16, 2002). As explained below, in the circumstances of this case the district court erred, and we vacate and remand.

## I.

On November 20, 1997, Eriline entered into an investment agreement (the "Investment Agreement") with Universal Marketing Group, Inc.[1] The Investment Agreement was signed by Eriline's president,

---

[1]According to the Complaint, to which the Investment Agreement was not attached, Eriline and Universal entered into the Agreement in 1998. As explained below, however, the Investment Agreement itself, first presented to the district court in connection with the Plaintiff's second set of motions for default judgment, indicates that it was executed on November 20, 1997. Eriline and Universal apparently also executed a second agreement, which was identical to the Investment Agreement except that it is dated September 21, 1998.

Bakchellian, as well as Universal's president, James P. Johnson. Under the Agreement, Eriline was to provide Universal with the sum of $450,000 that Universal was to combine with other funds in order to lease $100 million from Capital Assets Holding Corporation. The $100 million was then to be used to purchase a "prime bank" guarantee or letter of credit which would generate enormous profits for Eriline and others. Prior to the Agreement's execution, Eriline, on September 21, 1997, deposited the sum of $450,000 into an escrow account controlled by brothers Raymond E. Moore and Lee Allen Moore. Eriline was to direct the release of those funds to Universal upon confirmation by Capital's bank that it held $100 million of Capital's money in Universal's name. Approximately fifteen banking days thereafter, Universal was to facilitate the first payment of profits to Eriline in the sum of $450,000, with additional payments of $450,000 to follow once a month for the next nine months, for a total of $4.5 million. Unfortunately for Eriline, it never saw a dime of its expected profits or its original investment.

On September 14, 2001, Eriline and Bakchellian (together, the "Plaintiffs") filed their complaint (the "Complaint") in the Western District of North Carolina against Universal, Johnson, Prime Source Trading, LLC, Steven Cloudtree, Michael Koucky (a/k/a Michael Loucky), and the Moore brothers.[2] The Complaint alleged violations of § 10(b) of the Securities Exchange Act of 1934 against each of the seven defendants (the "federal securities claim"). It also alleged various state law claims of breach of contract, negligence, breach of trust, fraud, rescission, and conversion against the defendants in various configurations (the "state claims"). The state claims included a claim against Johnson for breach of an agreement by which he allegedly promised to pay Bakchellian $4.5 million in exchange for a release from any liability to Bakchellian and Eriline ("the "Release Agreement").[3]

Of the seven defendants, only the Moores answered the Complaint. On April 1, 2002, the Plaintiffs filed a motion for entry of default

---

[2]According to the Complaint, Prime Source, Cloudtree, and Koucky induced the Plaintiffs to accede to the Agreement.

[3]The copy of the Release Agreement included in the Joint Appendix is undated and was not fully executed. *See* J.A. 181-82.

against defendants Universal, Johnson, Prime Source, and Cloudtree, and the court clerk entered the default that same day. On June 3, 2002, the Plaintiffs filed two motions for default judgment: one against Johnson in the sum of $4.5 million on the claim that Johnson had breached the Release Agreement, and the other against Johnson, Universal, Prime Source, and Cloudtree in the sum of $450,000 on the federal securities claim as well as several of the state claims. The clerk entered both of the default judgments later that day. Thereafter, in August 2002, the plaintiffs voluntarily dismissed their claims against Koucky and the Moores.[4]

By order of October 16, 2002, the district court vacated both the default judgments entered by the clerk on June 3, 2002, in part because the Plaintiffs had failed to support their requests by filing the Investment Agreement and the Release Agreement with either the Complaint or their motions for default judgment. *See Eriline Co. S.A. v. Johnson*, No. CA-01-215 (W.D.N.C. Oct. 16, 2002). On March 7, 2003, the Plaintiffs filed a second set of motions for default judgment, seeking the same relief they had sought on June 3, 2002. This time, however, the Plaintiffs supported their motions with several documents, including copies of the Investment Agreement and the Release Agreement.

By order of April 11, 2003, the district court, which then had the Investment Agreement before it for the first time, raised the defense of the statute of limitations *sua sponte*. It concluded that the federal securities claim was barred by the three-year statute of limitations in 15 U.S.C. § 78i(e), and that the state claims were barred by the three-year statute of limitations in section 1-52 of the North Carolina General Statutes. In so ruling, the court expressed its view that the running of a limitations period is jurisdictional in nature and thus must be raised and considered by the court *sua sponte* when not affirmatively asserted by one of the parties. The court therefore denied the Plaintiffs' second set of motions for default judgment and dismissed the Complaint in its entirety for lack of subject matter jurisdiction.

---

[4]Although the Plaintiffs dismissed their claims against Koucky in August 2002, he is designated as a defendant-appellee in this appeal.

The plaintiffs have timely noted their appeal. Because the defendants had defaulted and were not represented by counsel, we proceeded to appoint, on July 26, 2005, an "*amicus* counsel [to] support[ ]" them in this appeal (the "*amicus*").

## II.

As explained below, the district court erroneously determined that the expiration of the applicable statutes of limitations deprived it of subject matter jurisdiction. Nevertheless, there is some question whether the district court otherwise possessed such jurisdiction over the state claims. The Plaintiffs invoked the court's diversity jurisdiction under 28 U.S.C. § 1332. At oral argument on November 29, 2005, however, it was observed that the parties might not be completely diverse. Accordingly, by order of even date, we directed the Plaintiffs and the *amicus* to file supplemental briefs addressing the question of subject matter jurisdiction.

As the Plaintiffs and the *amicus* now agree, complete diversity is lacking in this case because there are aliens on both sides of the dispute: each of the Plaintiffs is an alien and so is defendant Cloudtree. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) ("[A]lien citizenship on both sides of the controversy destroys diversity.").[5] In order to remedy this jurisdictional deficiency, the Plaintiffs now urge that we dismiss Cloudtree, the alien defendant without whom complete diversity would exist. *See* Appellant's Supp. Br. at 3. As the Plaintiffs correctly point out, we have the authority, under the Supreme Court's decision in *Newman-Green, Inc. v. Alfonzo-Larrain*, to dismiss dispensable defendants who spoil diversity jurisdiction. *See* 490 U.S. 826, 837 (1989) (ruling that, in interests of judicial economy, a court of appeals has "authority to dismiss a dispensable nondiverse party"). Nevertheless, the Supreme Court has instructed us to exercise such authority "sparingly." *Id.* Moreover, in order to dismiss Cloudtree from this case, we must first be satisfied that he is not an indispensable party under Rule 19(b) of the Federal Rules of Civil Procedure. *See id.*; *Casas Office Machines,*

---

[5]As the parties agree, Eriline is a Uruguay corporation with its principal place of business in Argentina, Bakchellian is a citizen of Argentina, and Cloudtree is a citizen of the Bahamas.

*Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675 (1st Cir. 1994) (observing that appellate courts "may not, of course, dismiss *indispensable* parties from an action in order to preserve federal jurisdiction"). And the determination of whether a party is indispensable, because of its fact-specific nature, is a matter normally committed to the discretion of the district court. *See Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980) ("The inquiry contemplated by Rule 19 . . . is addressed to the sound discretion of the trial court.").

In light of these principles, and because there was little factual development below, if diversity of citizenship were the sole basis of the district court's jurisdiction, we would be tempted to conditionally remand this matter for its determination of whether Cloudtree should be dismissed (on the basis of being a dispensable defendant who spoils jurisdiction). Such a remand, however, is unnecessary because, as the *amicus* correctly observes, the district court also possessed supplemental jurisdiction over the state claims, which was derived from its federal question jurisdiction over the federal securities claim. *See* 28 U.S.C. §§ 1331, 1367(a).[6]

Pursuant to § 1367(a), when a plaintiff has alleged both federal and state claims, a district court may exercise supplemental jurisdiction over the state claims if they form "part of the same case or controversy" as the federal claim. In this case, the Plaintiffs' state claims plainly arise from the same "case or controversy" as the federal securities claim, for both the securities claim and the state claims arise

---

[6]The Plaintiffs did not, in the Complaint, assert supplemental jurisdiction as a basis for the district court's jurisdiction. Rather, they asserted that the district court possessed diversity jurisdiction over the state claims and "exclusive" jurisdiction over the federal securities claim. Nonetheless, a district court "may sustain jurisdiction when an examination of the entire complaint reveals a proper basis for assuming jurisdiction other than one that has been improperly asserted." *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978) (internal quotation marks omitted); *see also Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) ("[I]n the absence of an affirmative pleading of a jurisdictional basis a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded.").

from the same set of facts: the fraud scheme allegedly orchestrated by the defendants. *See White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993) (observing that district court may exercise supplemental jurisdiction over claims that "the plaintiff would ordinarily be expected to try . . . in one judicial proceeding"). The district court therefore properly exercised supplemental jurisdiction over the state claims. And although the Plaintiffs have only appealed the dismissal of their state claims, the dismissal of those claims constitutes a "final decision[ ]" under 28 U.S.C. § 1291, and we therefore possess jurisdiction to resolve this appeal. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) (reviewing merits of state claims where district court's jurisdiction derived from § 1367 and appellant only appealed state claims); *Hamaker v. Ivy*, 51 F.3d 108, 110 (8th Cir. 1995) (same).

### III.

The Plaintiffs' sole contention on appeal is that the district court erred in raising the statute of limitations defense *sua sponte*, and then dismissing their state claims on that basis.[7] The *amicus* asserts in response that the district court properly considered the statute of limitations defense *sua sponte*, in the circumstances of this case. Whether a district court has properly considered a statute of limitations defense *sua sponte* is a question of law that we review de novo. *See Thompson*

---

[7]In addition to their contention that the district court erroneously raised the statute of limitations defense *sua sponte*, the argument section of the Plaintiffs' brief contains a single sentence asserting that the district court "erroneously determined that the statute of limitations barred the action." Appellant's Br. at 12. This conclusory remark is insufficient to raise on appeal any merits-based challenge to the district court's ruling. *See* Fed. R. App. P. 28(a)(9)(A) (requiring argument section of brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Igen Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303, 308 (4th Cir. 2003) ("Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues."). In any event, our conclusion that the district court erred in raising and addressing the statute of limitations issue *sua sponte* renders superfluous any merits-based challenge to the court's ruling.

*v. Greene*, 427 F.3d 263, 267 (4th Cir. 2005) (observing that legal questions are reviewed de novo).

As the Plaintiffs correctly assert, the statute of limitations is an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence. *See* Fed. R. Civ. P. 8(c); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations . . . constitutes an affirmative defense."). Where a defendant has failed to raise a statute of limitations defense by way of its answer, the defense is usually waived. *See Peterson v. Air Line Pilots Ass'n Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985); *see also Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (observing that an affirmative defense may also be raised in a pre-answer motion pursuant to Rule 12(b)(6) of the Federal Rules "when the face of the complaint clearly reveals [its] existence").[8] As a defense waivable by the inaction of a party, the statute of limitations bears the hallmarks of our adversarial system of justice, a system in which the parties are obliged to present facts and legal arguments before a neutral and relatively passive decisionmaker. *See United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."). And because it "erod[es] the principle of party presentation so basic to our system of adjudication," the Supreme Court has cautioned that *sua sponte* consideration of a statute of limitations defense should be done sparingly by the trial courts, even in those narrow circumstances where it is authorized. *Arizona v. California*, 530 U.S. 392, 412-13 (2000).

---

[8]Because the statute of limitations is a waivable defense, the district court erroneously determined that its restrictions are jurisdictional in nature. *See Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002) (observing that statute of limitations is not jurisdictional and can be waived); *United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) (distinguishing jurisdictional bars from statute of limitations); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002) (observing that subject matter jurisdiction, as a limitation on the judicial power, "can never be forfeited or waived").

It is against the backdrop of these principles that we assess the *amicus*'s contention that the district court properly raised and considered the statute of limitations defense *sua sponte* in this case. In support of that contention, the *amicus* first relies on decisions addressing a district court's "inherent power" to dismiss a case *sua sponte*. *See Amicus* Br. at 10 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962); *United States v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993)). Those decisions, however, do not address a district court's power to raise affirmative defenses on its own, but rather a district court's power to protect important institutional interests of the court. In *Link*, the Supreme Court concluded that a district court possesses the "inherent power" to dismiss a case *sua sponte* for failure to prosecute, explaining that such authority derives from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 370 U.S. at 630-31. And in *Shaffer Equipment*, we recognized that such "inherent power" encompasses a court's authority to dismiss an action *sua sponte* "when a party deceives [the] court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." 11 F.3d at 462. Quite aside from the interests of the individual parties in a lawsuit, a district court has an important interest in keeping its docket from becoming clogged with dormant cases and in ensuring that a party does not use the court as an instrument of fraud or deceit.[9]

To be sure, certain affirmative defenses implicate important institutional interests of the court, and may sometimes be properly raised

---

[9]As discussed above, the Investment Agreement, which was not presented to the court until the Plaintiffs' second round of default judgment motions, indicates that it was consummated in 1997. The Complaint, however, alleges that the Investment Agreement was entered into in 1998. The *amicus* suggests that, once the district court was made aware of the actual date of the Agreement (from the Plaintiffs' second round of motions for default judgment), it felt misled and raised the statute of limitations defense *sua sponte* for that reason. *See Amicus* Br. at 20. Although the circumstances presented the district court with grounds for being suspicious, its opinion contains no indication that it felt misled. And we are not at liberty to speculate that unarticulated reasons drove the court's decision. Moreover, the district court dismissed the claims not on the basis of abuse of process, but on the basis of the statute of limitations.

and considered *sua sponte*. For example, the affirmative defense of res judicata — which serves not only "the defendant's interest in avoiding the burden of twice defending a suit," but also the important judicial interest in avoiding resolution of an issue that the court has already decided — may, in "special circumstances," be raised *sua sponte*. *Arizona*, 530 U.S. at 412-13; *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (concluding that policy of "avoiding relitigation" justified *sua sponte* consideration of defense of collateral estoppel).

A statute of limitations defense, by contrast, primarily serves only defendants by "preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 473 (1975). Any interest that a court generally possesses in the enforcement of a statute of limitations defense pales in significance compared to those interests implicated by failure to prosecute, abuse of process, and res judicata. And such an interest ordinarily falls short of that necessary to outweigh the benefits derived from adhering to the adversarial process, and requiring that a defendant either raise the defense of statute of limitations or waive its protection.[10]

---

[10]In addition to the decisions discussed above, the *amicus* relies on numerous decisions recognizing that a district court may *sua sponte* dismiss a complaint for failure to state a claim. *See Amicus* Br. at 13-15 (citing, inter alia, *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994); *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992)). The failure of a complaint to state facts entitling the plaintiff to relief, however, is fundamentally different from the existence of an unasserted affirmative defense. Where the face of a complaint plainly fails to state a claim for relief, a district court has "no discretion" but to dismiss it. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990); *see also Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959) (observing that a motion to dismiss for failure to state claim "allows of no discretion in the usual sense" because "a complaint is either good or not good"). A district court, however, is plainly free to render judgment to a plaintiff on a claim to which the defendant has an affirmative defense that he has waived. The concept of waiver would otherwise have little or no meaning in the context of affirmative defenses.

Although a court generally possesses no strong institutional interest in the enforcement of a statute of limitations, we have recognized that a statute of limitations defense may properly be raised *sua sponte* by a district court in certain narrow circumstances. Specifically, we have permitted *sua sponte* consideration of the statute of limitations when such a defense plainly appears on the face of either a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254, *see Hill v. Braxton*, 277 F.3d 701, 706 (4th Cir. 2002), or a complaint filed in forma pauperis pursuant to 28 U.S.C. § 1915, *see Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 953-54 (4th Cir. 1995). As explained in *Hill* and *Nasim*, this deviation from the general rule — that a statute of limitations defense is waived if not timely raised by the defendant — is justified for two reasons. First, both habeas corpus and in forma pauperis proceedings, like failure to prosecute, abuse of process, and res judicata, implicate important judicial and public concerns not present in the circumstances of ordinary civil litigation. Second, in both habeas corpus and in forma pauperis proceedings, the district courts are charged with the unusual duty of independently screening initial filings, and dismissing those actions that plainly lack merit.

In *Hill*, we concluded that a district court may raise a statute of limitations defense *sua sponte* when the existence of the defense plainly appears on the face of a § 2254 petition. *See* 277 F.3d at 706. In so ruling, we emphasized that "[a]ctions brought pursuant to § 2254 implicate considerations of comity, federalism, and judicial efficiency not present in ordinary civil actions." *Id.* at 705. We further observed that Rule 4 of the Rules Governing § 2254 Cases (the "Habeas Rules") imposes on a district court the duty to independently examine the merits of a § 2254 petition, and that such a duty "differentiates habeas cases from other civil cases with respect to *sua sponte* consideration of affirmative defenses." *Id.* (internal quotation marks omitted); *see also Kiser v. Johnson*, 163 F.3d 326, 328-29 (5th Cir. 1999) (concluding that, although Federal Rule 8(c) does not permit court to consider affirmative defenses *sua sponte*, Habeas Rule 4 permits courts to do so in context of habeas corpus).[11] These circumstances,

---

[11]Habeas Rule 4 requires the district courts to examine each habeas petition, and "if it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition" without requesting an answer from the respondent. 28 U.S.C. foll. § 2254.

we concluded, justified a departure from the usual rule that the statute of limitations, as an affirmative defense, must either be raised by the defendant or be deemed waived. *See* 277 F.3d at 705-06.

In *Nasim*, we concluded that, in evaluating a complaint filed in forma pauperis pursuant to § 1915, a district court may consider a statute of limitations defense *sua sponte* when the face of the complaint plainly reveals the existence of such defense. *See* 64 F.3d at 953-54. In so ruling, we observed that, in eliminating the requirement for paying costs, § 1915 removed "any economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," and thus carried the potential to overburden the judicial system with patently meritless lawsuits. *Id.* (internal quotation marks omitted). Furthermore, § 1915(e)(2), like Habeas Rule 4, imposes on the district courts a duty to screen initial filings. Specifically, it requires a district court to dismiss a complaint filed in forma pauperis "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious . . .[or] fails to state a claim on which relief may be granted." § 1915(e)(2)(B)(i)-(ii). In analyzing an earlier version of the statute, we observed in *Nasim* that § 1915 permits district courts to independently assess the merits of in forma pauperis complaints, and "to exclude suits that have no arguable basis in law or fact." 64 F.3d at 954.[12] We further explained that this screening authority differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*. *Id.* at 953-94; *see also Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (concluding that district court can raise statute of limitations defense *sua sponte* in evaluating complaint filed pursuant to § 1915).

It was therefore the important judicial and public interests implicated by suits pursuant to § 2254 and § 1915, combined with the quasi-inquisitorial role of a district court in such proceedings to screen initial filings, that justified our departure from the general rule

---

[12]When *Nasim* was decided in 1995, § 1915 permitted a district court to dismiss a complaint filed in forma pauperis "if satisfied that the action is frivolous or malicious." 28 U.S.C.A. § 1915(d) (West 1994). As quoted above, the statute currently speaks in mandatory language and appears to require a more wide-ranging inquiry than its predecessor.

that a defendant must either timely raise a statute of limitations defense or waive its benefits. In this case, an ordinary civil case, such circumstances are not present, and the district court should have refrained from raising and considering the statute of limitations defense *sua sponte*. Its failure to do so constitutes an error of law.[13]

IV.

Pursuant to the foregoing, we vacate the district court's dismissal of the state claims and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[13]In ruling that a statute of limitations defense cannot be considered *sua sponte* in ordinary civil proceedings, we join our sister circuits to have addressed the issue. *See Haskell v. Wash. Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) ("Since it is a waivable defense, it ordinarily is error for a district court to raise the [statute of limitations] *sua sponte*."); *Davis v. Bryan*, 810 F.2d 42, 45 (2d Cir. 1987) (concluding that *sua sponte* consideration of statute of limitations was "error of law"); *Wagner v. Fawcett Publ'ns*, 307 F.2d 409, 412 (7th Cir. 1962) (observing that statute of limitations is "a personal privilege of the defendant," and that district court erred in rasing it *sua sponte*).